IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DALE EDWARDS,** | CIVIL NO. 1: CV-05-0808 |
| Petitioner | |
| | Judge Rambo |
| v. | |
| **THOMAS HOGAN,** *et al.*, | |
| Respondents | |

## **M E M O R A N D U M**

Before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have briefed the issues, and the matter is ripe for disposition. For the reasons that follow the court will grant Petitioner's Petition for a writ of habeas corpus. In accordance with this memorandum and order, the court will provide that the Government has thirty (30) days to remove Petitioner from the country. If the Government is unable to do so, the Government will be directed to grant Petitioner parole until the removal of Petitioner can be accomplished.

**I.      Background**

On April 21, 2005, Petitioner filed a Petition for writ of habeas corpus challenging his continued detention by the United States Immigration and Customs Enforcement ("ICE"). The following facts are incorporated into this memorandum through the Government's response to Petitioner's petition. (Doc. 8.) Petitioner is a citizen of Antigua, who first entered the United States in 1992. At some point Petitioner left the country. On or about December 8, 1997, Petitioner attempted to

return to the United States.  At that point, Petitioner was found to be attempting to gain entry into the United States through the use of counterfeit stamps in his passport.  Petitioner was deemed to be inadmissable under § 212(a)(6)(c)(i) and 212(a)(7)(I)(1) of the Immigration and Nationality Act as an alien seeking to procure admission via fraud and as an immigrant not in possession of a valid visa.  Petitioner was removed from the United States and barred from entering or attempting to enter for a period of five years.

At some unknown time and place, Petitioner re-entered the country without approval of the immigration service.  As a result, on March 18, 2004, the immigration service reinstated Petitioner's December 1997 removal order and took Petitioner into custody.

Petitioner has been in post-order detention for a period exceeding fourteen months.  On April 4, 2005, Petitioner received his most recent custody review and was denied release.  (Gov't Resp., Ex. E.)  The decision to continue detention was based on ICE's determination that Petitioner was a flight risk and a threat to the public.  (*Id*.)  In addition, ICE provided that a request for a travel document was submitted to the Consulate of Antigua and the process to verify Petitioner's identity was ongoing.  (*Id*.)

As of the date of this memorandum and order, Antigua has not issued travel documents for Petitioner.  Moreover, there is no indication that any alternate country is willing to accept Petitioner.  Petitioner does not challenge his deportation.  To the contrary, Petitioner appears more than willing to return to his country of citizenship.

**II.        Discussion**

Petitioner asserts that his detention is indefinite. According to Petitioner, his detention is in violation of international law, his due process rights, and the Eighth Amendment prohibition against cruel and unusual punishment. The court finds Petitioner's argument based on the Fifth Amendment's Due Process Clause to be convincing.

The Fifth Amendment's Due Process Clause "forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty without due process of law.' " *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Under federal regulations, the INS is permitted to detain an alien for 90 days following a final order of removal. INA § 241(a)(1)(A), 8 U.S.C. § 1231 (a)(1)(4). In *Zadvydas,* the Supreme Court held that the 90 day detention period was lawful, and that six months was a presumably reasonable period of detention after the final order of removal is issued. *Zadvydas*, 533 U.S. at 701-02.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

*Id*. at 701.

The Government contends that Petitioner has failed to show that there is no significant likelihood of his removal within the reasonably foreseeable future. In

the alternative, the Government argues that even if Petitioner has met his burden, there is reason to believe that his removal is likely in the reasonably foreseeable future.[1]

With respect to Petitioner's burden of showing that there is "good reason to believe there is no significant likelihood of his removal within the reasonable future," the court finds that he has met his burden. *Id*. Petitioner has been in custody since March 2004. This is well beyond the presumably reasonable period of six months provided by *Zadvydas*. *Id*. at 701-02. Petitioner states in a sworn affidavit that he applied for travel documents from the Antigua Consulate on two different occasions, the last time being February 14, 2005. (Exs. Supp. Pet.'s Writ of Habeas Corpus, Ex. A.) On both occasions, Petitioner asserts that he was told travel documents would not be issued. (*Id*). The court also considers that the Government need only secure a travel document based on proof of Petitioner's citizenship in Antigua, yet has failed to do so in over fourteen months. The court finds that Petitioner has met his burden of showing that there is no significant likelihood of removal within the reasonably foreseeable future.

The burden now shifts to the government to present evidence sufficient to rebut Petitioner's showing that there is no significant likelihood of removal within the reasonable future. As provided by *Zadvydas*, the fact that Petitioner has been in custody beyond the six month period does not mean that he must be released. *Id.* "To the contrary, an alien may be held in confinement until it has been determined

---

[1] The Government also asserts that while in detention, Petitioner is receiving regular custody reviews and thus his due process rights are being protected. *Zadvydas* provided that "we believe that an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinate and potentially permanent. *Zadvydas*, 533 U.S. at 696. The Court held that once removal is no longer reasonablely foreseeable, continued detention is unconstitutional. *Id* at 699. Accordingly, the court rejects this argument.

that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. However, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink." *Id*. at 701.

In *Zadvydas*, the Court addressed the claims of two separate petitioners. First, the court addressed the claims of *Zadvydas*, and overruled the Fifth Circuit's holding that detention was lawful "as long as 'good faith efforts to effectuate . . . deportation continue' and [Petitioner] failed to show that deportation will prove 'impossible.' " *Id*. at 702 (citing *Zadvydas v. Underdown*, 185 F. 3d 279, 294, 297 (5th Cir. 1999)). The Court indicated that such a standard wold require a alien seeking release to show that there was no possibility of his release, "no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. The court found that such a standard would violate an individual's due process rights. Second, the court addressed *Kim Ho Ma v. Reno*, 208 F. 3d 815 (9th Cir. 2000). In *Ma*, the Ninth Circuit provided that the petitioner should be granted release because there was no reasonable likelihood of his removal in the foreseeable future. *Id*. at 831. The Court remanded *Ma* on the basis that the Ninth Circuit's conclusion "rested solely upon the 'absence' of an 'extant or pending' repatriation agreement without giving due weight to the likelihood of successful future negotiations." *Zadvydas*, 533 U.S. at 702 (quoting *Kim Ho Ma*, 208 F. 3d at 831). Thus, while the existence of good faith efforts of the part of the Government will not suffice to show the likelihood of removal in the reasonablely foreseeable future, the court will consider the likelihood of successful future negotiations in securing Petitioner's removal.

The Government asserts that efforts to remove Petitioner are proceeding and involve the highest levels of official action.  According to the Government, both the Antiguan Ambassador to the United States and the Antiguan Embassy's Consular Official have been contacted within the past thirty days and they indicated that they would review the matter as soon as possible.  (Govt's Resp., Ex. D.)  The Government asserts that this evidence of ongoing action indicates that there is likelihood of Petitioner's removal from this country within the reasonably foreseeable future.  However, while the Antiguan Ambassador indicated that Antigua intends to cooperate with deportations, it is hampered by a lack of resources to conduct the checks necessary to confirm nationality.  (*Id*.)  These appear to be two contradictory statements from the Antiguan government.  On the one hand, they assert that they will look into the matter as soon as possible, and on the other hand, they asset that they lack the basic resources to conduct what would appear to be a relatively simple investigation into Petitioner's status as an Antiguan national.

Neither the United States Government nor the Antiguan Government provide any indication of when such resources will become available.  While the statements of the Antiguan Government indicate a good faith effort on the part of the United States to remove Petitioner, this, in and of itself, will not suffice.  Petitioner has been in custody for over fourteen months awaiting a confirmation of his Antiguan nationality status and the issuance of his travel documents.  Put simply, the court is perplexed by the Antiguan Government's lack of sufficient funds to conduct the checks necessary to confirm Petitioner's nationality.  If in the course of fourteen months the Government of Antigua has been unable to secure the funding, is it likely that it will be able to do so in the reasonably foreseeable future?  Because

Petitioner's removal has already been pending for over fourteen months, the court concludes that it is not. The court finds that the Government fails to rebut Petitioner's showing that there is no reasonable likelihood of his removal in the foreseeable future.

### III.     Conclusion

Based on the discussion above, the court finds that there is no reasonable likelihood of his removal in the foreseeable future. However, in light of the Government's assertion that it has been in contact with the Antiguan Government, and that the Government of Antigua will act on the matter as soon as possible, the court will give the Government 30 days to secure the necessary documents for Petitioner's removal from the United States. At the conclusion of these 30 days, if the Government has not received the needed travel documents, Petitioner will be released on parole pending the resolution of his removal from the United States. An appropriate order will issue.

 s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: June 20, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DALE EDWARDS,** | **CIVIL NO. 1: CV-05-0808** |
| Petitioner | |
| | **Judge Rambo** |
| v. | |
| **THOMAS HOGAN,** *et al.*, | |
| Respondents | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Petitioner's petition for a writ of habeas corpus is **GRANTED** as follows.

2) The Government shall have until July 21, 2005 to secure the necessary travel documents to effect the removal of Petitioner. If on July 21, 2005, the Government has failed to do so, Petitioner shall be released from the custody of the Immigration and Customs Enforcement on parole pending the resolution of Petitioner's removal from the United States.

3) The Government shall provide the court with a status report by July 28, 2005, indicating if Petitioner has been granted parole or removed from the United States.

                                                                  s/Sylvia H. Rambo
                                                                  SYLVIA H. RAMBO
                                                                  United States District Judge

Dated: June 20, 2005.